## KEYES v. NORTHWESTERN NAT. INS. CO. OF MILWAUKEE, WIS.

(District Court S. D. California, S. D. April 2, 1924.)

No. 1250–J.

1. Insurance ⊕319(1)—Increase of hazard by changing occupancy from dwelling to boarding house held to avoid policy.

An insurer *held* not liable for a fire loss, where the property, insured while occupied for dwelling purposes only was occupied when destroyed as a boarding house by a tenant of insured, to whom it was leased after the policy was issued; it being expressly provided that an increase of the hazard by insured should suspend liability, unless by special agreement indorsed on the policy.

2. Insurance ⊕378(1)—Knowledge by insurer of unauthorized use of building held not waiver.

Where by the terms of a policy liability thereunder is suspended in case the building is used for a purpose which increases the hazard, knowledge of insurer that it is so used is not a waiver, since the original use may be resumed.

At Law. Action by David L. Keyes against the Northwestern National Insurance Company, of Milwaukee, Wis. Judgment for defendant.

Sheran & Alvord, of Los Angeles, Cal., for plaintiff.

W. W. Hindman, of Los Angeles, Cal., for defendant.

JAMES, District Judge. This an action at law, brought to recover on two policies of fire insurance, one dated April 1, 1921, for the amount of $3,000, and the second dated January 25, 1922, for $2,000. Each policy was for the term of three years, and both covered the same property, which was described as a "two-story———roof frame building, and its additions," etc.; it being stated on the face of each policy that the insurance was to cover the property "while occupied only for dwelling house purposes." The body of the policies contained the statement that the same were made and accepted subject to the "foregoing stipulations and conditions and those hereinafter stated, which are hereby specially referred to, and made part of this policy, * * * and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except by writing indorsed hereon or added hereto."

Among the conditions attached, and under the title "Matters Suspending Insurance" there was stated: "Unless otherwise provided by agreement indorsed hereon or added hereto, this company shall not be liable for loss or damage occurring (a) while the hazard be materially increased by any means within the control of the insured. * * *" The building described in the policies was destroyed by fire, and the defendant contests the claim of the plaintiff upon two principal grounds, only one of which needs be given particular attention. That contention refers to a change made in the use of the building without the consent of the insurer; the substituted use being more hazardous than that permitted by the terms of the policy.

[1] The facts as the evidence disclosed them were that the plaintiff and his wife had for considerable time occupied the building as a dwelling house for themselves alone and such servants as might have been there employed. They were so occupying the place at the time the first policy was issued. In November, 1921, and before the second policy was issued, plaintiff leased the building to another person, who in turn made a sublease of it to another tenant, who was occupying it at the time it was consumed by fire in June, 1922. The second tenant was using the building for the purpose of a hotel or boarding house at the time of its destruction by fire. Plaintiff testified that he knew of this use. It appears that the development of oil had encroached upon the location where the house was situated, rendering it undesirable to the plaintiff for residence purposes, for which reason he moved away and leased the property; that the lessees kept a large number of roomers and boarders, as many as 20 men being housed there at the same time, presumably workers in the neighboring oil fields; that the hazard was increased by this use, and that, if it had been insured under such use, a considerably higher rate would have been charged, assuming that the defendant company would have been willing to carry the risk, which was optional with it.

As the terms of the policy limited the use to one not of great hazard, and specifically provided that the contract was made with that condition, the insurer had the right to insist upon the terms of its contract and disclaim liability under the facts. A number of cases have been cited, but I think that the opinion in Connecticut Fire Insurance Co. v. Buchanan (C. C. A.) 141 F. 877, 4 L. R. A. (N. S.) 758, Judge Van Devanter, then Circuit Judge, writing the opinion, clearly states the law.

[2] To avoid this defense the plaintiff asserts that there was a waiver of the condition worked by reason of the fact that a local agent of the company issued a policy to the tenant covering loss by fire on the furniture located in the same building. The local agent and his superior, the general agent, testified that they at no time had knowledge of the changed use to which the building was being put; the local agent stating that at the time he wrote the furniture policy he did not know that it covered property in the building described in the policies of the plaintiff. But, even though he had such knowledge, I do not believe that that fact would show a waiver of an express condition in the policies covering the building. Regardless of the condition keeping in force the insurance during the time that the building should be occupied "only for dwelling house purposes," the suspension clause would have the effect of making inoperative the liability of the company during such intervals as the use might be changed to a more hazardous one than that specified. The insurer was not bound to cancel the policies upon notice of change of use, but had the right to assume that the insured, mindful of the suspension clause of the contract, might return the building to its use as a dwelling house, and so restore the binding effect of the policy at any time.

The second proposition advanced in defense, as entitling the defendant to be exon-

erated from liability, need only be mentioned; that is, that the contract was made under representation that the insurer possessed the whole and entire ownership of the property. The fact was that, long prior to the issuance of the policies, plaintiff had made and recorded a deed of grant, which on its face transferred to an adult daughter all his interest in the land and building improvements. The deed was not actually delivered to the daughter, but was placed of record at the instance of plaintiff, who testified that, in conformity with a practice theretofore adopted by him of distributing his property by deeds to his several children, he had made this deed, intending that it should be operative as taking away the control of the property from him only upon his death. In view of the conclusion announced as to the first question discussed, it will not be necessary to decide how effectual the recording of the deed was to divest plaintiff of title.

Findings and judgment will be in favor of the defendant.